IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:07-CV-290-FL

| ELIZABETH G. BRAKE, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | **MEMORANDUM** |
| v. | ) | **AND** |
| | ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the cross-motions of the parties for judgment on the pleadings pursuant to Rule 12(c), Fed. R. Civ. P. Elizabeth G. Brake ("Claimant") filed this action seeking judicial review of the denial of her application for a period of disability, disability insurance benefits ("DIB") and supplemental security income ("SSI"). The time for filing responses to the pending motions has expired and the matters are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda of the parties, the court recommends that Claimant's motion for judgment on the pleadings be denied, defendant's motion for judgment on the pleadings be granted, and the final decision of the Commissioner be upheld.

## STATEMENT OF THE CASE

On January 30, 2004, Claimant protectively filed an application for a period of disability, DIB and SSI alleging to having become disabled beginning October 31, 2002. (R.13). Claimant's application was denied initially and upon reconsideration. Thereafter, she requested a hearing before an Administrative Law Judge ("ALJ"), which was held on November 13, 2006, at which she was represented by counsel and testimony was elicited from a vocational expert ("VE") and a social

worker. The ALJ issued a decision denying Claimant's claims on December 14, 2006. (R.19). The Appeals Council denied Claimant's request for review on May 25, 2007, rendering the ALJ's decision a "final determination" for purposes of judicial review. (R.5-7). Claimant has commenced the present action pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I. Standard of Review

When reviewing a decision of an administrative law judge, the court must determine whether there is substantial evidence to support the findings and whether the law was applied correctly. *See* 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (superceded by statute on other grounds); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (superceded by statute on other grounds). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (internal citation omitted); *see Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Ultimately, it is the duty of the administrative law judge reviewing the case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." *Hays*, 907 F.2d at 1456. Even if the court disagrees with the Commissioner's decision, the court must uphold the decision if it is supported by substantial evidence. *Id.*

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920 under which the ALJ is to evaluate a claim:

The claimant (1) must not be engaged in "substantial gainful activity," *i.e.*, currently

2

working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform his past work or (5) any other work.

*Albright v. Commissioner of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.* The Commissioner often attempts to carry its burden through the testimony of a VE, who testifies as to the availability of jobs based on the characteristics of the claimant.

In the present case, Claimant contends that the ALJ erred in (1) failing to properly evaluate and credit the opinion of Claimant's treating physician and (2) failing to properly evaluate Claimant's complaints of pain and Claimant's credibility. Pl.'s Mem. of Law at 2 [DE-16] (hereafter "Pl.'s Mem.").

## STATEMENT OF THE FACTS

### I. The Findings by the ALJ

In making the decision in this case, the ALJ proceeded through the five-step evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920, and found that Claimant had not engaged in any substantial gainful activity since October 31, 2002, the alleged disability onset date. (R.15). Then, the ALJ proceeded to step two to determine whether Claimant had a "severe" impairment or combination of impairments which significantly limited her from performing basic work activities. The ALJ found that Claimant suffered from the following severe impairments: degenerative joint

3

disease of the knee, obesity and osteoarthritis. (R.15). At step three, the ALJ determined that Claimant's impairments were not severe enough to meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R.16). Next, the ALJ determined Claimant's RFC by considering all of her subjective complaints and the entire medical record. (R.16-19). The ALJ found that Claimant had the RFC to perform sedentary work with a sit/stand option, no kneeling or use of foot controls and occasional postural activities.[1] (R.16, 17). At step four, the ALJ explained that Claimant is unable to perform past relevant work. (R.17-18). At step five, after considering Claimant's age, education, work experience and RFC, the ALJ determined that Claimant could perform work as an order clerk, parking lot attendant, and call-out operator. (R.18). As a result, the ALJ found that Claimant was not disabled. (R.19).

## II.   Claimant's Testimony at the Administrative Hearing

Claimant testified that she is unmarried and resides in Rocky Mount, North Carolina with her mother and eleven year-old daughter. (R.220, 221). Claimant did not complete high school but has obtained her high school equivalency degree (GED). (R.221-22). Although she has a drivers' license, Claimant drives infrequently, once every several weeks. (R.221). Claimant was last employed on October 31, 2002, when she was a short-order cook. (R.222). Her prior work history

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a); 416.967(a); S.S.R. 96-9P, 1996 WL 374185, at *3. "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. "Sitting" generally totals about 6 hours of an 8-hour workday. S.S.R. 96-9P, 1996 WL 374185, at *3. A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. § 404, Subpt. P, App. 2, Table 1. *Id.*

4

includes jobs as a kindergarten teacher and a certified nursing assistant. (R.223).

At the time of the hearing, Claimant was being treated by Dr. Proctor, her family physician of six or seven years, and Dr. Nelson, her orthopedic surgeon. (R.224). Claimant testified that she was currently taking Nexium, but that she preferred not to take narcotics because the side-effects of this medication made her sick. (R.224-25).

When asked to describe her disability symptoms, Claimant testified that she is not able to sit longer than five to ten minutes until she becomes uncomfortable, experiencing pain in her hips and back. (R.225, 229). Claimant stated further that she cannot stand longer than ten minutes because her knees will lock and her legs will give out. (R.225, 229). Claimant said she wears a knee brace continuously and uses a cane. (R.226-227). Claimant also stated that she has arthritis in her neck and has pain in her neck and collarbone, but that she has not received treatment nor does she wear a brace. (R.227). Claimant stated further that she has pinched nerves and pain in her ankles and fluctuating numbness in her extremities. (R.228). Claimant has not sought medical treatment for numbness. (R.228).

Claimant stated that the pain in her hips and back is constant and that she has treated her pain with a heating pad, ibuprofen and over-the counter medication because she cannot tolerate other medication. (R.228). Claimant testified that she can walk only a few minutes before she begins feeling pain. (R.228-29).

Claimant testified that Dr. Proctor advised her that she could not lift or carry weight over five pounds because she is unable to carry heavy objects while walking. (R.230). Claimant said that she cannot lift five pounds without making her pain worse. *Id.* She said that she can lift two or three pounds without worsening her pain. *Id.*

5

As for daily activities, Claimant said that she washes dishes, vacuums and cooks, but that the pain in her legs requires her to sit down before she can complete these tasks. (R.230-31). Claimant does not leave her home to go very many places other than visiting her physicians, the store and attending church approximately once a month. (R.231).

### III. Testimony of the Social Worker

Clarice Wright, a social worker of seven years, testified at the hearing. (R.236, 237). Wright testified that she has been Claimant's social worker since 2003. (R.236-37). Wright stated further that she sees Claimant on a monthly basis and that each time she has seen Claimant, Claimant has been in pain and laying with her leg in a raised position to relieve the pain. (R.237).

### IV. Testimony of the Vocational Expert

Rehabilitation Consultant, Julie Sawyer-Little, M.S. (Rehabilitation Science), testified as a VE at the administrative hearing without objection from Claimant. (R.238). She described Claimant's past relevant work as follows: Short-Order Cook, light exertional level with a Specific Vocational Preparation ("SVP") of 3 and a Dictionary of Occupational Titles ("DOT") code of 13.374-014; Child Daycare worker, light exertional level with an SVP of 4 and a DOT code of 359.677-018; Nurse Assistant, medium exertional level with an SVP of 4 and a DOT code of 355.674-014. (R.238). The VE testified further that assuming Claimant were limited to sedentary work the Claimant did not have transferable skills. (R.238). The ALJ then offered the following hypothetical to the VE:

> I want you to assume a hypothetical individual the same age, education, and work background as that of the Claimant. And I want you to assume this individual is limited to forms of sedentary work as that term is defined in the regulations, only this individual would need a job where they're [sic] able to alternately sit and stand such that they wouldn't be in either position for more than

Case 5:07-cv-00290-FL Document 21 Filed 07/24/08 Page 6 of 15

20 to 30 minutes at a time. This individual needs to avoid kneeling or jobs requiring operation of foot controls and should also avoid more than occasional postural activities such as stooping or the like. With those limitations, can you suggest any jobs that hypothetical individual could perform?

(R.238-39).

The VE testified that the individual described in the hypothetical could perform the job of an Order Clerk (DOT 209.567-014) at a sedentary exertional level with an SVP of 2, of which there are 800 to 1000 in the state, 50,000 to 100,000 nationally. (R.239). The VE testified that the hypothetical individual could also perform the job of a Parking Lot Attendant (DOT 915.473-010). (R.239). Although this position is classified by the DOT as light with an SVP of 2, the VE considers the position sedentary based on her observation of how the job is performed. (R.239). The VE stated further that the Parking Lot Attendant position "does not require any appreciable amount of lifting and can be performed either sitting or standing." (R.239). She testified that there are 1,000 to 2,000 of these jobs in the state and 50,000 to 100,000 nationally. The VE testified further that the hypothetical individual could perform the job of a Callout Operator (DOT 237.367-014) at a sedentary level with an SVP of 2, of which there are 1,000 jobs in the state and 50,000 to 100,000 nationally. (R.239).

The ALJ then asked the VE to assume that the individual has all of the limitations described by the Claimant, specifically her need to lie down or to elevate her legs throughout the day, having to change positions every five to ten minutes, and an inability to lift more than two or three pounds. (R.239-40). The VE testified that such an individual could not engage in these jobs or any other jobs on a full-time and competitive basis. (R.240). The VE

7

testified that there was no conflict between her testimony and the DOT. (R.240).

## V. Analysis of Claimant's Argument

### A. The ALJ did not err in evaluating the medical evidence or the opinion of Claimant's treating physician.

Claimant contends that the ALJ improperly discredited the opinion of Claimant's treating physician, Camilla Proctor, M.D., purportedly contained in two medical examination reports located in Exhibit 9-F (R.193-96) of the record.[2] Pl.'s Mem. at 2-3. This Court disagrees.

According to Claimant, Dr. Proctor opined that Claimant could not work due to her pain and instability in her knees and that it was not safe for her to operate an automobile. *Id.* at 2. She contends that the ALJ erroneously accorded this opinion little weight and failed to evaluate Dr. Proctor's opinion according to the Social Security regulations. *Id.* at 3. Moreover, Claimant contends that Dr. Proctor's opinion as to Claimant's inability to work is in fact not contradicted by Dr. Nelson, Claimant's orthopedic specialist, as found by the ALJ. *Id.* at 3-4. The ALJ addressed this evidence directly, specifically noting Dr. Proctor's opinion that "Claimant has instability of her left knee and cannot work until her knees were stabilized and pain controlled." (R.17). However, the ALJ explained the reason for not relying on this evidence was due to the conclusions reached by Dr. Nelson and the opinions of the State Agency physicians. (R.17).

---

[2]Both parties have attributed the observations expressed in this exhibit to Dr. Proctor. However, it is not altogether clear that she is in fact the author of these records. A review of these documents reveals that while Dr. Proctor is identified on each of the reports as the "Reporting Physician," the individual who has signed the reports is not Dr. Proctor but a physician assistant. (R.194, 196). For purposes of the discussion however, this court has assumed that the findings expressed in the reports are those of Dr. Proctor. Nonetheless, the records are not as dispositive as urged by Claimant. In fact, one memoranda recommends that Claimant see her orthopedic surgeon for evaluation as to improving her capacity to work. (R.196).

8

The opinion of a treating physician is generally entitled to great weight. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (per curiam). The underlying rationale is that the opinion of a treating physician "reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Id.* However, appropriate support in the record must warrant deference to the treating physician's opinion. In particular, a treating physician's opinion on the nature and severity of the claimed impairment is accorded controlling weight only when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590; *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) (citation omitted) (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence"). In fact, an ALJ "may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source...if he sufficiently explains his rationale and if the record supports his findings." *Wireman v. Barnhart*, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006) (internal citations omitted). In those cases in which there is conflicting medical evidence from treating physicians, as here, the ALJ may give more weight to the opinion of the specialist about medical issues related to his or her specialty than to the opinion of a source who is not a specialist. *See* 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5); *see also Stewart v. Apfel*, 182 F.3d 909, 1999 WL 485862, at *4 (4th Cir. July 12, 1999).

When the ALJ does not give the opinion of a treating physician controlling weight, he must weigh the opinion pursuant to the following factors: (1) the length of the treatment relationship and

9

the frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors. 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)(I)-(ii), (d)(3)-(6); *see Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). Moreover, the ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by substantial evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996). In sum, "an ALJ's determination as to weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies or has not given good reason for the weight afforded a particular opinion." *Koonce v. Apfel*, 166 F.3d 1209, 1999 WL 7864, at *2 (4th Cir. Jan. 11, 1999) (unpublished disposition) (internal citations omitted).

Dr. Proctor's opinion is not well supported by, and is inconsistent with, the medical findings of Dr. Nelson and her opinion was rejected by the ALJ for this reason. (R.17). The records of Dr. Nelson constitute substantial evidence to support the findings of the ALJ. The record indicates that Dr. Nelson is an orthopedic surgeon and that he was Claimant's treating physician over several years for complaints associated with Claimant's knee and back. (R.168-82, 191-92). Over the course of his treatment of Claimant, Dr. Nelson diagnosed Claimant with osteoarthritis of the left knee, bilateral knee pain and treated her for complaints of back and ankle pain. Dr. Nelson noted Claimant experienced no pain with a full range of motion in her hips, knees and ankles (R.168, 169, 171, 173, 174, 176, 178, 181, 191) and that her leg raises and stretching were normal. (R.168, 173, 176, 181). In an evaluation dated December 8, 2004, Dr. Nelson indicated that Claimant was ambulating

without the assistance of walking aids and that she had a full range of motion in her spine, shoulders, elbows wrists and hips. (R.168). Dr. Nelson's examination of Claimant's knees revealed little or no effusion (R.168-71, 173, 174, 178, 181, 191) and that Claimant was negative for Lachman's or McMurray's signs. (R.168, 169, 173, 174, 181, 191). He opined further that he saw no reason Claimant could not be trained to do some form of work and recommended that she exercise and continue working on weight reduction. (R.168, 169, 174, 176). Although opinions as to legal issues are reserved to the Commissioner, Dr. Nelson's opinion and explanation are relevant supporting evidence. *See Carlton v. Astrue*, 2008 WL 681184, at *10 (E.D.N.C. Mar. 7, 2008) ("More weight should be given the more the physician presents relevant supporting evidence, the better he explains the opinion, and the more consistent the opinion is with the record as a whole.") (citations omitted). In his most recent evaluation contained in the record, dated September 27, 2006, which in fact post-dates those purportedly of Dr. Proctor, Dr. Nelson observed that Claimant was ambulating without assistance with a knee brace, and that she was experiencing no pain with a full range of motion in her hips. (R.191, 193-96). As cited by the ALJ, the records of Dr. Nelson describing Claimant constitute "evidence which a reasoning mind would accept as sufficient to support a particular conclusion" that Claimant is not disabled. *See Shively*, 739 F.2d at 989.

The ALJ also explained that he relied upon the opinions of State Agency medical experts who evaluated Claimant's impairments during the administrative review of the record and reached conclusions consistent with those of the ALJ. (R.17, 167, 190). Findings by State Agency medical personnel regarding the nature and severity of an individual's impairments cannot be ignored by the ALJ and the ALJ gave these findings appropriate weight. S.S.R. 96-6p; *Johnson*, 434 F.3d at 657.

Substantial evidence supports the ALJ's decision to discount Dr. Proctor's opinion. In

particular, the ALJ's determination regarding the evidentiary weight of Dr. Proctor's opinion incorporated the 20 C.F.R. §§ 404.1527(d) and 416.927(d) factors explicitly invoking two of the factors: (1) the supportability and (2) consistency of the opinion when compared to the evidence from other treating physicians and medical sources. (R.17). The ALJ included further in his discussion a description of Dr. Proctor's treatment of Claimant and acknowledged her role as Claimant's primary care physician. (R.15, 16). It was also the consideration of these factors that ultimately convinced the ALJ to accord decreased weight to Dr. Proctor's opinion, as the absence of a sufficient rationale for the opinion and the inconsistency between the opinion and other medical evidence in the record reasonably downgraded the true evidentiary value of the medical report. (R.17). Additionally, the ALJ complied with S.S.R. 96-2p by making his decision sufficiently specific for subsequent reviewers to understand the weight accorded Dr. Proctor's opinion and the reasons for said weight. *See Koonce*, 1999 WL 7864, at *2. Accordingly, the ALJ was within his discretion in not giving controlling weight to Dr. Proctor's opinion.

Here, the ALJ sufficiently explained his rationale for weighing the medical record and the opinions contained therein. The explanations are supported by substantial evidence. Accordingly, this assignment of error is without merit.

### B. The ALJ properly evaluated Claimant's credibility.

Claimant contends next that the ALJ improperly evaluated Claimant's complaints of pain and erred when he found that Claimant was not credible. Pl's Mem. at 4.

In assessing a claimant's credibility, the ALJ must follow a two-step process. First, the ALJ must determine whether the claimant's medically-determinable impairments could reasonably cause the alleged symptoms. *Craig*, 76 F.3d at 594-95. Next, the ALJ must evaluate the claimant's

12

statements regarding those symptoms. *Id.* at 595. The Social Security regulations require that an ALJ's decision "contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." S.S.R. 96-7p, 1996 WL 374186, at *4 (July 2, 1996). When an ALJ fails to specify the reasons for an adverse credibility determination, remand is appropriate. *See Ivey v. Barnhart*, 393 F. Supp. 2d 387, 390 (E.D.N.C. 2005) (concluding that remand was appropriate because the ALJ failed to adequately explain the basis of his credibility determination). "Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively*, 739 F.2d at 989.

Here, after considering the evidence in the record, the ALJ found "that the Claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (R.17). The ALJ acknowledged Claimant's allegations of pain in her back, hip and knees and her contention that these conditions prevented her from working. (R.16). However, the ALJ provided specific reasons for his adverse credibility findings. For instance, the ALJ noted Dr. Nelson's finding that Claimant was able to ambulate and position herself without assistance (R.17, 191). The ALJ noted further Claimant's use of a non-prescribed cane, (R.16, 17, 227), her normal straight leg raising tests, and negative bilateral McMurray and Lachman's signs. (R.17, 168, 169, 173, 174, 176, 181, 191). Although Claimant complained of pain, the ALJ noted Dr. Nelson's repeated findings of Claimant's full range of motion without pain (R.168, 169, 171, 173, 174, 176, 178, 181, 191) and that Claimant's medication was limited to that

13

which she takes for acid reflux. (R.17, 224).

As shown, the ALJ explained thoroughly his credibility analysis. The fact that Claimant may point to other evidence in the record that supports the alleged severity of her pain does not diminish the ALJ's analysis. *See e.g., Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762 n.10 (4th Cir. 1999) (ALJ need not discuss every piece of evidence in making credibility determination); *see also Williams v. Astrue*, 2007 WL 4592260, at *3 (E.D.N.C. Dec. 28, 2007). Rather, when conflicting evidence is presented, it is up to the ALJ to resolve those inconsistencies. *Hays*, 907 F.2d at 1456. It is not the responsibility of this court to determine the weight of the evidence. *Id.* Here, the ALJ pointed to evidence in the record to support his conclusion that Claimant was not entirely credible. Therefore, he has satisfied his duty under the applicable regulations and law and did not err in finding Claimant not entirely credible.

## CONCLUSION

Accordingly, this court finds that there is substantial evidence within the record to support the findings of the ALJ. For this reason, this Court RECOMMENDS that Claimant's motion for judgment on the pleadings be DENIED, that defendant's motion for judgment on the pleadings be GRANTED, and that the decision of the ALJ be upheld.

The Clerk shall serve copies of this Memorandum and Recommendation upon counsel for the respective parties. The parties have ten (10) days after being served with this Memorandum and Recommendation to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a *de novo* review by the district court on an issue covered in this Memorandum and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.

14

This, the 24th day of July, 2008.

*Robert Jones Jr.*
Robert B. Jones, Jr.
United States Magistrate Judge